**United States District Court**
For the Northern District of California

1          ** E-filed May 9, 2011 **

2

3

4

5

6

7                              NOT FOR CITATION

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11   MARIAN TANKERSLEY, et al.,                    No. C09-05763 HRL

12              Plaintiffs,                        **ORDER GRANTING DEFENDANTS'
                                                   MOTION TO DISMISS PLAINTIFFS'**
13        v.                                       **COMPLAINT**

     JOHN R. LYNCH, et al.,                        **[Re: Docket No. 14]**
14
                Defendants.
15   _____/

16                              **BACKGROUND**

17        In April 2007, California residents Marian Tankersley ("Tankersley") and Richard Diehl

18   ("Diehl") (collectively, "Plaintiffs") purchased a franchise and three exclusive territories from

19   Collision on Wheels International, LLC ("CoW"), a Michigan-based seller of mobile auto body

20   repair system franchises. Docket No. 1, Ex. A ("Compl.") ¶¶ 1, 2, 8. Their decision to do so was

21   based in part on information found in CoW's Uniform Franchise Offering Circular ("UFOC"),

22   which contains certain disclosures to potential franchisees and which CoW provided to Plaintiffs the

23   month before. Id. ¶¶ 7, 19, 25.

24        Plaintiffs allege that the UFOC upon which they relied contained misstatements and

25   omissions of material fact and that they have been harmed as a result. Id. ¶¶ 18, 21, 24, 26. They

26   filed suit against Michigan residents John Lynch ("Lynch"), Gregory Longe ("Longe"), Gregory

27   Mancina ("Mancina"), Louis Maio ("Maio"), and Richard Bass ("Bass") (collectively,

28

United States District Court
For the Northern District of California

1   "Defendants"), all of whom are officers or employees of CoW, for violations of Michigan franchise

2   law. Id. ¶¶ 2-6.

3       Defendants removed this action from California state court and moved to dismiss Plaintiffs'

4   complaint on the ground that this Court does have not have personal jurisdiction over Defendants.

5   Docket No. 1 ("Notice of Removal"); Docket No. 14 ("MTD"). Plaintiffs opposed Defendants'

6   motion. Docket No. 20 ("Opp'n"). Pursuant to Civil Local Rule 7-1(b), the Court finds the matter

7   suitable for determination without oral argument, and the May 10, 2011 hearing is vacated.[1]

8                               **LEGAL STANDARD**

9       "When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff bears

10  the burden of showing that jurisdiction is proper." Toyz, Inc. v. Wireless Toyz, Inc., No. C09-05091

11  JF (HRL), 2010 WL 334475, at *6 (Jan. 25, 2010) (citing Decker Coal Co. v. Commonwealth

12  Edison Co., 805 F.2d 834, 839 (9th Cir. 1986)). "In the context of a motion to dismiss based upon

13  pleadings and affidavits, the plaintiff may meet this burden by making a prima facie showing of

14  personal jurisdiction." Id. (citing Metropolitan Life Ins. v. Neaves, 912 F.2d 1062, 1064 n. 1 (9th

15  Cir. 1990); Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.

16  1977)). "In determining whether the plaintiff has made a prima facie showing, documents submitted

17  by the plaintiff are construed in the light most favorable to the plaintiff and all doubts are resolved

18  in the plaintiff's favor." Id. (citing Metropolitan Life Ins., 912 F.2d at 1064 n.1).

19      A federal district court sitting in California may exercise personal jurisdiction over a non-

20  resident defendant if the defendant has "minimum contacts" with California such that maintenance

21  of the suit "does not offend traditional notions of fair play and substantial justice." Data Disc, 557

22  F.2d at 1287 (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "If the

23  nonresident defendant's contacts within [California] are 'substantial' or 'continuous and

24  systematic,'" the defendant is subject to general jurisdiction in California even if the cause of action

25  is not related to the defendant's activities within the state. Data Disc, 557 F.2d at 1287. "If the

26  defendant's activities within the state are not so pervasive as to subject it to general jurisdiction, it

---

27  [1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, all parties have expressly
28  consented that all proceedings in this matter may be heard and finally adjudicated by the
    undersigned. See Docket Nos. 4, 7.

2

1    may be subject to specific jurisdiction." <u>Toyz</u>, 2010 WL 334475, at *6. "The Court may subject a

2    defendant to specific jurisdiction if the defendant's contacts with the forum satisfy the following

3    three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

10   <u>Id</u>. (quoting <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004)).

**DISCUSSION**

A.  <u>General Jurisdiction</u>

        The Court will first determine if general jurisdiction may be exercised over Defendants.

Plaintiffs argue that it may for the following reasons:

- CoW registered its UFOC with the California Department of Corporations

- CoW sold franchises to California residents (including Plaintiffs)

- The franchise agreements CoW entered into with California residents included a California-specific addendum

- CoW provided ongoing support services to its California franchisees

Docket No. 21 ("Tankersley Decl.") ¶ 14; Docket No. 22 ("Napell Decl.") ¶ 15.

        While these facts might subject <u>CoW</u> to this Court's general jurisdiction, they certainly do

not subject <u>the individual Defendants</u> to it. Each of Defendants are Michigan residents who appear

to lack "substantial" or "continuous and systematic" ties to California. <u>See</u> Docket Nos. 15-19. As

discussed below, Plaintiffs' allegations that Defendants participated in the sale of Plaintiffs'

franchise are important with respect to determining whether specific jurisdiction exists, but they do

not support the exercise of general jurisdiction.

B.  <u>Specific Jurisdiction</u>

3

**United States District Court**
For the Northern District of California

1    Under the specific jurisdiction test described above, Plaintiffs have the burden on the first

2  and second prongs, and Defendants have the burden on the third.

3    Taking the second prong first, "[a] claim arises out of a defendant's conduct if the claim

4  would not have arisen 'but for' the defendant's forum-related contacts." <u>Matsunoki Group, Inc. v.</u>

5  <u>Timberwork Oregon, Inc.</u>, No. C08-04078 CW, 2008 WL 5221077, at *3 (N.D. Cal. Dec. 12, 2008)

6  (citing <u>Panavision Int'l v. L.P.v. Toeppa</u>, 141 F.3d 1316, 1322 (9th Cir. 1998)). Here, it is clear that

7  Plaintiffs' claims arise out of or relate to Defendants' California-related activities (i.e., their

8  participation in CoW's sale of a franchise to Plaintiffs).

9    As for the first prong, Plaintiffs must establish purposeful availment of or purposeful

10  direction toward the forum state. <u>Toyz</u>, 2010 WL 334475, at *6. These are two distinct concepts.

11  <u>Schwarzenegger</u>, 374 F.3d at 802. "A purposeful direction analysis 'is most often used in suits

12  sounding in tort.'" <u>Toyz</u>, 2010 WL 334475, at *6. (citing <u>Schwarzenegger</u>, 374 F.3d at 802; <u>Dole</u>

13  <u>Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002); and <u>Ziegler v. Indian River County</u>,

14  64 F.3d 470, 473 (9th Cir. 1995)). Here, although Plaintiffs' claims are for violation of Michigan

15  franchise law, the alleged violations are based upon alleged written and oral misrepresentations

16  sounding in tort. <u>See</u> <u>id</u>.

17    "Demonstration of purposeful direction 'usually consists of evidence of the defendant's

18  actions outside the forum state that are directed at the forum, such as the distribution in the forum

19  state of goods originating elsewhere.'" <u>Id</u>. (citing <u>Schwarzenegger</u>, 374 F.3d at 803). "A court

20  evaluates purposeful direction under the three-part 'effects' test established in <u>Calder v. Jones</u>, 465

21  U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), requiring 'that the defendant allegedly have (1)

22  committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

23  defendant knows is likely to be suffered in the forum state.'" <u>Id</u>. (quoting <u>Schwarzenegger</u>, 374 F.3d

24  at 803).

25    Plaintiffs contend that Defendants directed acts toward California that caused Plaintiffs

26  harm. Specifically, they submitted evidence showing that:

27    • Bass sent a copy of the UFOC to Tankersley in California

28

- Bass, Longe, and Mancina engaged in telephone conversations and email communications with Tankersley

- Bass invited Tankersley to participate in weekly conference calls held by WoC personnel (including Defendants) for potential franchisees around the nation

- Bass sent Tankersley a spreadsheet to help create a pro forma income statement for her prospective CoW franchise in California, and Bass and Mancina helped her fill it in with estimated data

- Bass invited Plaintiffs to attend "Discovery Day" in Michigan in April 2007 during which Plaintiffs and other prospective franchisees learned about CoW

Tankersley Decl. ¶¶4-13, Exs. A-C.

Defendants argue that Defendants' various actions described above were taken on behalf of CoW and that the fiduciary shield doctrine does not allow personal jurisdiction over Defendants unless there is a reason to disregard the corporate form. It is true that "[u]nder the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." Davis v. Metro Prod. Inc., 885 F.2d 515, 520 (9th Cir. 1989). "However, the corporate form may be ignored in two cases: (1) where the corporation is the agent or alter ego of the individual defendant, Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1393 (9th Cir. 1984); or (2) by virtue of the individual's control of, and direct participation in the alleged activities, Transgo Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985)."[2] Wolf Designs, Inc. v. DHR & Co., 322 F.Supp.2d 1065, 1072 (C.D.Cal. 2004).

"A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir. 1999). "However, mere knowledge of tortious conduct by the corporation is

---

[2] To the extent that Defendants contend that their actions cannot form the basis for exercising personal jurisdiction unless Plaintiffs demonstrate that CoW is the mere alter-ego of Defendants, this argument clearly fails, as the above-quoted language makes clear. See MTD at 3-5. Personal jurisdiction may be exercised when a defendant controls or directly participates in the alleged wrongdoing. Transgo, 768 F.2d at 1021.

United States District Court
For the Northern District of California

1   not enough to hold a director or officer liable for the torts of the corporation absent other

2   'unreasonable participation' in the unlawful conduct by the individual." <u>Wolf Designs</u>, 322

3   F.Supp.2d at 1072 (citing <u>PMC, Inc. v. Kadisha</u>, 78 Cal.App.4th 1368, 1389 (2d Dist. 2000)).

4   "Cases which have found personal liability on the part of corporate officers have typically involved

5   instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the

6   'central figure' in the challenged corporate activity." <u>Davis</u>, 885 F.2d at 524 (citations omitted).

7   Plaintiffs do not allege an alter ego theory, so the Court must determine if Defendants were "guiding

8   spirits" in the alleged wrongdoing directed at Plaintiffs in California.

9          It is a close call. It appears that several of Defendants communicated with Plaintiffs about

10   their purchase of a franchise in California, but it is unclear whether Plaintiffs or Defendants initiated

11   these discussions. And while Defendants' conference calls were attended by prospective franchisees

12   from many different states (including California), these calls were not specific to California. Further,

13   although some Defendants may have helped Plaintiffs determine whether purchasing a franchise

14   was right for them, no Defendants ever went to California to assist them in this regard. In fact,

15   Plaintiffs, along with other prospective franchisees, had to go to Michigan to gain more information.

16   Other courts have found that personal jurisdiction is lacking in similar, though not identical,

17   circumstances. <u>See</u> <u>Toyz</u>, 2010 WL 334475, at *6-10 (concluding in a franchise dispute that

18   California Plaintiffs did not meet their burden to show that Michigan defendants had minimum

19   contacts within the state and that exercising personal jurisdiction would be unreasonable); <u>see also</u>

20   <u>Burgo v. Lady of Amer. Franchise Corp.</u>, No. SA CV 05-0518 DOC (RNBx), 2006 WL 6642172, at

21   *5-7 (C.D. Cal. May 4, 2006).

22          Regardless, even if Plaintiffs do meet their burden on this second prong (and it is unclear if

23   they do), Defendants meet their burden on the third one: whether the exercise of jurisdiction is

24   reasonable. In this Circuit, a court must look to seven factors that are relevant to this determination:

25   "(1) the extent of the [defendant's] purposeful interjection into the forum state's affairs; (2) the

26   burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of

27   the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

28   judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

**United States District Court**
For the Northern District of California

1  convenient and effective relief; and (7) the existence of an alternate forum." <u>Callaway Golf Corp. v.</u>

2  <u>Royal Canadian Golf Ass'n.</u>, 125 F.Supp.2d 1194, 1205 (9th Cir. 2000).

3      As for the first factor, "[e]ven if there is sufficient 'interjection' into the state to satisfy the

4  [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the

5  overall reasonableness of jurisdiction under the [reasonableness prong]." <u>Core-Vent Corp. v. Nobel</u>

6  <u>Industries</u>, 11 F.3d 1482, 1488 (9th Cir. 1993) (brackets in original) (quoting <u>Insurance Company of</u>

7  <u>North America v. Marina Salina Cruz</u>, 649 F.2d 1266, 1271 (9th Cir. 1981)). <u>But see</u> <u>Roth v. Garcia</u>

8  <u>Marquez</u>, 942 F.2d 617, 623 (9th Cir. 1991) (degree of interjection analysis and purposeful

9  availment inquiry redundant). As explained above, it is a close call as to whether Defendants'

10  purposefully availed themselves of the privilege of conducting business in California at all, so this

11  factor weighs in favor of them.

12      As for the second factor, "[w]here burdens are equal, this factor tips in favor of the

13  defendants because the law of personal jurisdiction is 'primarily concerned with the defendant's

14  burden.'" <u>Ziegler</u>, 64 F.3d at 475 (citations omitted). While Plaintiffs live and work in California,

15  Defendants all live and work in Michigan. Thus, the burden on Defendants to litigate in California

16  is, at the very least, equal to that of Plaintiffs. In this situation, this factor tips in favor of

17  Defendants.

18      As for the third and fourth factors, exercising personal jurisdiction over Defendants would

19  not conflict with the sovereignty of Michigan. California also has an interest in adjudicating a

20  dispute when the alleged injuries to a plaintiff occur in California. <u>Brand v. Menlove Dodge</u>, 796

21  F.2d 1070, 1075 (9th Cir. 1986). These factors weigh in favor of Plaintiffs.

22      As for the fifth factor, the Ninth Circuit has "looked primarily at where the witnesses and the

23  evidence are likely to be located." <u>Core-Vent</u>, 11 F.3d at 1489 (citation omitted). Here, Plaintiffs are

24  located in California, and Defendants are located in Michigan. Other current or former employees of

25  CoW would likely be located in Michigan as well, and other prospective franchisees who also may

26  have attended conference calls or events could be located in any number of states. In these

27  circumstances, this factor weighs in favor of Defendants.

28

7

United States District Court
For the Northern District of California

As for the sixth and seventh factors, it obviously would be more convenient for the California-based Plaintiffs to litigate the instant action in California. Still, "neither the Supreme Court nor our court has given much weight to inconvenience to the plaintiff." Ziegler, 64 F.3d at 476 (citing Core-Vent, 11 F.3d at 1490). Moreover, Plaintiffs can obtain the same relief in Michigan that they could in this Court. In fact, Plaintiffs have already engaged in arbitration with CoW in Michigan, so Plaintiffs have already pursued remedies in that state.[3] These factors favor Defendants.

Looking at all of the factors, the Court concludes that the exercise of personal jurisdiction over Defendants would be unreasonable given the minimal extent to which Defendants have injected themselves into California (if at all) and the greater judicial efficiency of having the matter heard in the state where the majority of parties and potential witnesses are located. Accordingly, the Court concludes that it lacks personal jurisdiction over Defendants.

**CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss is GRANTED. Plaintiffs' complaint is dismissed with prejudice. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: May 9, 2011

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[3] In December 2009, the Court granted the parties' stipulation for an order staying the case pending the outcome of arbitration between Plaintiffs and Collision on Wheels in Michigan. Docket No. 8. The Court instructed the parties to notify it when the arbitrator issued a final award. Docket No. 11. The arbitrator issued a final award on February 22, 2011; Plaintiffs notified the Court of this fact the same day. Docket No. 12.

8

<div style="writing-mode:vertical">**United States District Court**
For the Northern District of California</div>

1   **C09-05763 HRL Notice will be electronically mailed to:**

2   Bruce Jonathan Napell        bjn@singler-law.com
    Bryan W. Dillon              bwd@singler-law.com
3   Charles G. Miller            cmiller@bztm.com, bsage@bztm.com, pbrown@bztm.com
    Jason David Maynard          jdm@singler-law.com, tlb@singler-law.com
4   Simon Richard Goodfellow     sgoodfellow@steyerlaw.com

5    **See General Order 45 Section IX C.2 and D; Notice has NOT been electronically mailed to:**

6   Charles Godfrey Miller
    Bartko Zankel Tarrant & Miller
7   A Professional Corporation
    900 Front Street
8   Suite 300
    San Francisco, CA 94111

9
    **Counsel are responsible for distributing copies of this document to co-counsel who have not
10  registered for e-filing under the court's CM/ECF program.**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28